FANNIE SNYDER HICKMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

O. L. HICKMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16253, 16254. Promulgated October 23, 1931.

E. L. Bono, Esq., and S. M. Cook, Esq., for the petitioners.
T. M. Mather, Esq., and J. M. Morawski, Esq., for the respondent.

**OPINION.**

STERNHAGEN: Before considering the merits of any tax liability which may have existed in respect of 1920 against Fannie Snyder Hickman, it is necessary to determine whether the statutory period of limitations in respect thereof has expired, as contended by the petitioner. The original return was a joint return filed for husband and wife on March 8, 1921. It is well established that despite the fact that separate returns were later filed, the filing of this original joint return fixed the starting point of the statutory period of limitations. *Belle R. Weaver*, 4 B. T. A. 15; *Estelle B. Sargent*, 22 B. T. A. 1270. The tax being for 1920, it was imposed by the Revenue Act of 1918, and the period within which assessment and collection thereof were required to be made by the Commissioner was five years, Revenue Act of 1926, sec. 277(a)(3). Hence the statutory period expired before March 8, 1926, and the determination made by the respondent in this case on April 10, 1926, was too late.

The respondent, however, argues that because an earlier notice of deficiency had been mailed August 4, 1924, his time to assess was extended by 60 days, until May 7, 1926, making timely the determination in April. This contention is in all essential respects the same as that rejected by the Board in *Alice Wilson*, 23 B. T. A. 644. The respondent cites *Wayne Body Corporation*, 22 B. T. A. 401, reconsidered in 22 B. T. A. 1207, but that case is readily distinguishable. It involved the period within which the respondent could proceed against a transferee in respect of the liability for a deficiency

determined against the transferor, assessed after five years but within five years and 60 days from the time the return was filed. In the case at bar the first deficiency of 1924 had been both assessed and paid, so as to dispense with the occasion for extending the Commissioner's time to enforce it; and under such circumstances it was held in *Alice Wilson, supra,* that there was no need for an extension of the five-year period by 60 days and no reason to construe the statute so as to permit a second deficiency determination after the original five-year period had expired. Accordingly, as to this petitioner judgment of no deficiency will be entered.

As to the husband, O. L. Hickman, petitioner in Docket No. 16254, no contention is made in respect of the statute of limitations. He contends that by the gift to his wife of April 19, 1920, he divested himself of all interest in the remaining 40 acres of the Norton lease and therefore that no part of any gain realized upon the disposition thereof to the corporation could be attributable or taxable to him. He also, in the alternative, attacks the respondent's use of the par value of the stock as representing fair market value when received in determining the gain or loss from its disposition.

The petitioner's contention that he gave to his wife for her separate property his entire interest in the 40 acres is, in our opinion, not in accordance with the instrument of gift nor with the petitioner's own intention and understanding in respect of such gift at the time he made it. He said that he did not intend to give his wife more than half of their undivided half interest in the 40 acres. The gift instrument, in our opinion, gives her for her separate use one-half of the interest which they both theretofore had owned in community. *Snowden* v. *Cruse,* 152 La. 144; 92 So. 764; *H. C. Walker, Jr.,* 6 B. T. A. 1142. This left the remaining half of their interest as continuing to be held by them in community. Thus the petitioner remained the owner of a community interest in one-fourth of the 40 acres, which community interest was an undivided half in such one-fourth. In other words, of the 40 acres, one-half was never owned by the petitioners and need not be considered; and of the remaining one-half, Mrs. Hickman, by virtue of the gift, became the separate owner of one-fourth while the husband and wife together continued to remain the community owners of the remaining fourth. If, therefore, it had been necessary to ascertain a cost basis to be used in determining the gain of the husband from his sale of property, such cost would be ascertainable by attributing to him one-fourth of the half interest originally owned by him and his wife. But since the petitioner has already written off his cost in prior years, as stipulated

by the parties, and as a result the entire amount received by him must be taken as gain, it is unnecessary to consider the proportionate distribution of cost resulting from the gift. Suffice it to say that the husband did not, by the gift, part with his entire interest, but retained a substantial property interest in the said lease, which interest he sold to the corporation, and whatever he derived therefrom was gain taxable to him.

From the evidence it appears that he received one-half of the cash of $12,000, and 15,492 shares the value of which may be taken to be $5 per share, because the respondent so determined and the corporation's appraisal committee also substantially recognized this value and there is no countervailing evidence. There were also received notes of a face value of $8,350, the distribution of which does not clearly appear in the evidence, nor does it appear how this was treated by the respondent in the determination of this petitioner's deficiency. Hickman, in his testimony, spoke of receiving cash of $32,000, thus indicating that he regarded the notes as cash, of which he got half. We may fairly assume, therefore, that these notes were also equally divided, so that Hickman received half or $4,175. Thus the total he received from the sale to the corporation was the aggregate of $12,000 cash, $77,460 stock, and $4,175 notes, or $93,635.

But Hickman's entire interest in the 40 acres was, as we have seen, represented by his share of the community property, so that all that he received in the Sakaba sale was received by him in behalf of the community. This was properly taxable one-half each to himself and his wife. *Bender* v. *Pfaff*, 282 U. S. 127. Hickman, therefore, must be regarded as having realized a gain from the Sakaba sale of $46,817.50.

Within the year, Hickman, still acting in behalf of the community, sold 14,400 shares out of the 15,492 which the community had theretofore received. For these 14,400 shares, the community received $16,200, thus realizing a community loss of $55,800. Half of this, or $27,900, Hickman is entitled to treat as a deduction.

Respondent has admitted that the petitioner is individually entitled to a loss, heretofore disallowed, of $13,501.45 in respect of the drilling of dry holes and the expiration of leases. Readjustment of the deficiency will, therefore, take this further deduction into account.

> *In Docket No. 16253 judgment of no deficiency in respect to Fannie Snyder Hickman will be entered. In Docket No. 16254 judgment will be entered under Rule 50.*